1

Hon. Robert S. Lasnik

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9 AT SEATTLE

10

11 LOIS HILL DESIGNS, LLC, a Delaware
Limited Liability Company,        No. 2:20-cv-01403-RSL
12
Plaintiff,        **UNIQUE DESIGNS' MOTION
13                                     FOR SUMMARY JUDGMENT**

v.
14                                     Note on Motion Calendar:
UNIQUE DESIGNS, INC., a New York   **December 10, 2021**
15 Corporation,
ORAL ARGUMENT REQUESTED
16                    Defendant.

17

18      By and through its undersigned counsel and pursuant to this Court's Order

19 Regarding Briefing Schedule on Cross Motions for Summary Judgment (Dkt. No. 25),

20 Defendant Unique Designs, Inc. ("Unique Designs") files this Motion for Summary

21 Judgment.

22              **I.      INTRODUCTION AND RELIEF REQUESTED**

23      In May of 2020, Plaintiff Lois Hill Designs, LLC ("LHD") and Unique Designs

24 entered a settlement agreement (the "Settlement Agreement") to resolve a lawsuit pending

25 in King County Superior Court.  The Settlement Agreement explicitly provided that LHD

26 was to dismiss the King County lawsuit with prejudice within five days of its execution.

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 1

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Despite that explicit provision, LHD failed to dismiss the King County lawsuit and, apparently having buyer's remorse over the settlement, purported to reinstate its lawsuit (including all underlying issues that were resolved by the Settlement Agreement) against Unique Designs.

This Court should grant summary judgment in Unique Designs' favor on (1) its claim for declaratory judgment that the Settlement Agreement is enforceable and extinguished the claims between the parties (other than claims for enforcement of the Settlement Agreement) and (2) its claim for breach of the Settlement Agreement.[1]  The Court should further dismiss all of LHD's claims against Unique Designs because they were released by the Settlement Agreement.

## II.   QUESTIONS PRESENTED

Whether this Court should:

(1)     Grant summary judgment in favor of Unique Designs and against LHD on Unique Designs' claim for declaratory judgment that the Settlement Agreement is an enforceable contract that extinguished the rights, obligations, and claims under the Licensing Agreement;

(2)     Grant summary judgment in favor of Unique Designs and against LHD on Unique Designs' claim for breach of the Settlement Agreement due to LHD's failure to dismiss its lawsuit against Unique Designs; and

(3)     Dismiss LHD's claims against Unique Designs because they were released by the Settlement Agreement, when LHD admitted the Settlement Agreement is a valid contract and that contract required LHD to dismiss its claims with prejudice within five days of execution.

---

[1] Unique Designs alternatively asserts additional counterclaims for (1) breach of the original contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) tortious interference.  *See* Answer and Counterclaim (Dkt. No. 19) ¶¶ 37-51.  These claims will apply only if the Court finds that the Settlement Agreement is unenforceable.

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 2



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

### III.     EVIDENCE RELIED UPON

Unique Designs relies upon the declarations of Albert Franco, Ravi Patel, and Jeremy Roller, the exhibits attached thereto, and the pleadings and other papers on file in this action.

### IV.     FACTS

#### A.  The Licensing Agreement and LHD's Lawsuit

LHD is a jewelry designer.  Much of LHD's jewelry is manufactured in Southeast Asia.  Franco Decl. ¶ 3.  Unique Designs is a fine jewelry manufacturer and wholesaler.  *Id.* ¶ 4.  Unique Designs sells jewelry to retailers throughout the United States.  *Id.*

LHD sought out Unique Designs due to its robust relationships with nationally known, high-volume retailers.  *Id.* ¶ 5.  On or about February 1, 2019, Unique Designs and LHD entered a "Limited Licensing Agreement" (the "Licensing Agreement") whereby LHD licensed use of LHD jewelry designs to Unique Designs and Unique Designs agreed to purchase LHD-designed jewelry from certain manufacturers in Southeast Asia.  *Id.* ¶ 5 & Ex. 1.

Various disputes arose between LHD and Unique Designs.  *Id.* ¶ 6.  On April 6, 2020, Bill Brady of LHD emailed Unique Designs' CEO, Tejas Shaw, a "Notice of Default" and "Termination and Settlement Proposal," along with a draft complaint against Unique Designs captioned for the United States District Court for the Southern District of New York.  *Id.*  On April 27, 2020, LHD filed a lawsuit against Unique Designs in King County Superior Court.  *Id.* ¶ 7; *see also* Dkt. No. 4-1 (LHD's Original Complaint).  Days later LHD purported to terminate the Licensing Agreement.  Franco Decl. ¶ 7.

#### B.  The Settlement

##### 1.  Settlement Negotiations

Shortly after LHD filed its lawsuit against Unique Designs, the parties commenced settlement discussions.  *Id.* ¶ 8.  Although those discussions were contentious, eventually

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 3

the parties neared agreement on terms to resolve the dispute. *Id*. On May 13, 2020, Mr. Brady sent Unique Designs' President of Sales, Albert Franco, an email in which Mr. Brady indicated he would start drafting a settlement agreement. *Id.* ¶ 8 & Ex. 2.

Mr. Brady sent a draft settlement agreement to Mr. Franco on May 14, 2020. *Id.* ¶ 9. Over the following several days the parties exchanged multiple revisions of the settlement agreement LHD had prepared. *Id.* One of the many issues over which the parties negotiated was whether the settlement agreement would require dismissal of LHD's complaint with prejudice. *Id.* On May 18, 2020, Mr. Brady, who is a lawyer, had a conversation with Ravi Patel, Unique Designs' general counsel, regarding the settlement agreement. Patel Decl. ¶ 4. In that conversation, Mr. Patel indicated that Unique Designs would not enter the settlement agreement if dismissal of the King County Superior Court lawsuit was delayed until the obligations under the Settlement Agreement had been fulfilled. *Id.* Later Mr. Brady sent Mr. Patel an email in which Mr. Brady stated that LHD would withdraw the complaint only without prejudice. Franco Decl. ¶ 10 & Ex. 3. Mr. Patel responded to Mr. Brady, writing in part, "[a]ny dismissal must be with prejudice and any breach thereafter by either party can be resolved by enforcing the terms of the agreement or an injunction, option of which your attorney curiously took out of the agreement." *Id.* ¶ 10 & Ex. 3. Mr. Brady disagreed. *Id.* ¶ 10 & Ex. 3.

In the afternoon of May 19, 2020, Mr. Brady called Mr. Patel and left a voicemail asking that Mr. Patel return his call. Patel Decl. ¶ 7 & Ex. 1. Immediately after that, Mr. Brady sent Mr. Patel the following text message:

> Ravi, Bill Brady here. I am driving and spoke with Albert [Franco] who said we would be receiving Tejas' signature page very shortly. I have Lois' signature page on hand and will send when I receive Tejas'. Since I cannot read and compare the document while driving, can you confirm the only change you made was to that sentence we discussed on the phone regarding the removal of paragraph 2.c and 2.d. Thank you.

*Id.* ¶ 7 & Ex. 2.



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1     Fifteen minutes after receiving Mr. Brady's text message, Mr. Patel called Mr.

2   Brady and explained that he had removed reference to the payment obligations in

3   Paragraphs 2.b and 2.c of the dismissal section of the Settlement Agreement.[2]  *Id.* ¶ 8.  That

4   call lasted three and a half minutes.  *Id.* Ex. 3.

5     Shortly after their call, Mr. Patel sent Mr. Brady a copy of the Settlement

6   Agreement, signed by Unique Designs' CEO.  *Id.* ¶ 11 & Ex. 5; Patel Decl. ¶ 9.  The

7   dismissal section of the Settlement Agreement executed by Unique Designs provided:

8       LHD shall voluntarily dismiss the Lawsuit is has filed with prejudice
        within five (5) days of full execution of this Agreement, provided
9       however, that the exclusive jurisdiction of any lawsuit relating to this
        Agreement shall be in King County Superior Court, Seattle, Washington.
10

11  Franco Decl. ¶ 11 & Ex. 5; Patel Decl. ¶ 9.  Moments later (at 3:54pm Eastern Daylight

    Time), Mr. Brady emailed Mr. Patel and Mr. Franco the Settlement Agreement signature
12
    page executed by LHD, writing, "I am relying on the agreed upon few changes you
13
    mentioned to me on the phone just now, as I'm driving and not able to read the document
14
    carefully for a few hours."  Franco Decl. ¶ 11 & Ex. 6.
15
      On May 20, Mr. Brady requested a copy of the full Settlement Agreement with both
16
    separately signed signature pages.  *Id.* ¶ 12.  Mr. Brady renewed his request a week later,
17
    and Mr. Patel promptly thereafter sent the completely assembled Settlement Agreement to
18
    Mr. Brady.  *Id.* ¶ 12 & Ex. 7.  Mr. Patel also requested a copy of the stipulation of dismissal
19
    from Mr. Brady, which was not provided.  *Id.* ¶ 12 & Ex. 7.
20

21

22

23

24  ────────────────

    [2] Mr. Brady's reference to "removal of paragraph 2.c and 2.d" plainly was a mistaken reference to paragraphs
25  2.b and 2.c.  Paragraphs 2.b and 2.c were the only paragraphs referenced in "that sentence" (to use the term
    Mr. Brady used for the dismissal provision, Paragraph 2.m).  *See* Franco Decl. Ex. 4 ¶ 2.m.  And indeed Mr.
26  Patel did remove reference to Paragraphs 2.b and 2.c from the dismissal provision.  Compare *id.* Ex. 4 ¶ 2.m
    *with id.* Exs. 5, 7 ¶ 2.m; *see also* Patel Decl. ¶ 6.



### 2.  The Settlement Agreement

In the Settlement Agreement, the Parties acknowledged that they were resolving the

disputes that had arisen under the Licensing Agreement and were relinquishing their rights

under that agreement:

> Whereas, disputes and differences have arisen between the Parties with respect to the Contract (the "Dispute"), and both LHD and UD have agreed to settle said disputes and differences by executing this mutual Settlement Agreement and Release.
> . . .
> Whereas, the Parties recognize that **by the execution** of this mutual Settlement Agreement and Release, **they are relinquishing all their respective legal rights with respect to the Dispute and any claims and counterclaims that could have been asserted in the Lawsuit**.

Franco Decl. Ex. 7 (fully executed Settlement Agreement) at 1 (emphases added).

The release provisions in the Settlement Agreement are broad:

> **Release.**  Upon the full and final satisfaction by UD and LHD of any and all of their respective obligations under this Agreement, LHD and UD do hereby release, cancel, and forever discharge the other Party . . . from any and all claims, complaints, causes of action, demands, damages, obligations, liabilities, losses, promises, agreements, controversies, penalties, expenses, and executions of any kind or nature whatsoever, whether known or unknown, actual or potential, whether arising in law or in equity, which each Party may have, may have had, or may in the future obtain, arising out of or relating out of the acts, omissions, agreements, or events relating in any manner to the Contract and any claims and/or counterclaims that were or could have been asserted in the Lawsuit (the "Release").  . . . To avoid any confusion, notwithstanding the above, the Lawsuit was filed by LHD on May 1, 2020, but will be voluntarily withdrawn by LHD in accordance with Paragraph 2.m below.

*Id.* ¶ 1.

The Settlement Agreement goes on:

> **Effect.**  This Release is intended to be a general release in the broadest form. It is understood and agreed that the Parties hereby expressly waive any and all laws and statutes, of all jurisdictions whatsoever, which may provide that a general release does not extend to claims not known or suspected to exist at the time of executing a release which if known would have materially affected the decision to give said release.  It is expressly intended and agreed that this Release does, in fact, extend to such unknown and unsuspected claims **related to anything which has happened to the date hereof** which is covered by this Release, even if knowledge thereof would have materially affected the decision to give this Release.

*Id.* ¶ 3 (emphasis added).

As referenced in the Settlement Agreement's first release provision, within five days of execution of the agreement, LHD was to dismiss the lawsuit with prejudice:

> LHD shall voluntarily **dismiss the Lawsuit it has filed with prejudice within five (5) days of full execution of this Agreement**, provided however, that exclusive jurisdiction of any lawsuit relating to this Agreement shall be in King County Superior Court, Seattle, Washington.

*Id.* ¶ 2.m (emphasis added).

The Parties acknowledged that they had the opportunity to consult with counsel regarding the Settlement Agreement and that they entered the agreement at their own volition:

> **Independent Legal Counsel.**  The Parties acknowledge that they have had opportunity to consult with independent legal counsel of their choosing regarding the legal effect of this Agreement and the Release and that each Party freely and voluntarily enters into this Agreement.

*Id.* ¶ 5.

Finally, the Parties acknowledged that the Settlement Agreement superseded any prior agreements relating to its subject matter:

> **Entire Agreement.**  This Agreement sets forth the entire and complete understanding and agreement between the Parties regarding the subject matter hereof including, but not limited to the settlement of all disputes and claims with respect to the Contract and the Dispute and **supersedes any and all other prior agreements or discussions, whether oral, written, electronic or otherwise, relating to the subject matter hereunder**.  Any additions or modifications to this Agreement must be made in writing and signed by authorized representatives of both Parties.  The Parties acknowledge and agree that they are not relying upon any representations or statements made by the other Party or the other Party's employees, agents, representatives or attorneys regarding this Agreement, except to the extent such representations are expressly set forth herein.

*Id.* ¶ 14.

## C.  LHD Drags its Feet in Dismissing the Lawsuit

Although the Settlement Agreement explicitly provided that LHD would "dismiss the Lawsuit it has filed with prejudice within five (5) days of full execution of [the] Agreement," for weeks LHD declined to dismiss the lawsuit despite repeated requests from



Unique Designs.  Franco Decl. ¶ 13.  For example, on June 2, 2020, following an email from a Unique Designs employee confirming payment of $69,000 under the Settlement Agreement, another Unique Designs employee asked LHD to "please confirm that you withdrew all lawsuits, as per our agreement," to which LHD responded, "Will follow up with attorney today." *Id.* ¶ 13 & Ex. 8.  Just days later, LHD's representative said he would "contact our attorney in the morning about dismissal.  I left a message for him after we spoke and will follow up in the morning." *Id.* ¶ 13 & Ex. 9.  Multiple similar exchanges happened over much of June 2020. *Id.* ¶ 14 & Ex. 10.

### D.  Long After the Settlement, LHD Files Notice of Dismissal

On July 2, 2020—more than six weeks after the Settlement Agreement was entered—LHD filed a "Notice of Settlement with Prompt Dismissal" (the "Notice of Settlement") in King County Superior Court. *See* Roller Decl. Ex. 1.  In the Notice of Settlement, LHD informed the King County Superior Court that:

> **NOTICE OF SETTLEMENT OF ALL CLAIMS AGAINST ALL PARTIES**
>
> Notice is hereby given that **all claims in this action have been resolved**. Any trials or other hearings in this matter may be stricken from the court calendar. This notice is being filed with the consent of all parties.

*Id.* (first emphasis in original, second emphasis added).

### E.  LHD Purports to Reinstate the Lawsuit

On July 30, 2020, LHD filed a First Amended Complaint in King County Superior Court. *See* First Amended Complaint (Dkt. No. 1-1).  Approximately two weeks later, on August 14, 2020, LHD filed a "Withdrawal of Notice of Settlement" in King County Superior Court. *See* Roller Decl. Ex. 2.

Unique Designs timely removed the lawsuit to this Court on September 22, 2020. *See* Notice of Removal (Dkt. No. 1).

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

## V.   ARGUMENT

### A.  Standard

Summary judgment shall be granted when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d. 265 (1986).  Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The party opposing summary judgment "must present significant probative evidence tending to support its claim or defense."  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

### B.  The Public Interest Favors Enforcement of Settlement Agreements, which are Governed by Principles of Contract Law

There is an "overriding public interest in settling and quieting litigation."  *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977); *see also Haller v. Wallis*, 89 Wn. 2d 539, 545, 573 P.2d 1302 (1978) ("the law favors amicable settlement of disputes and is inclined to clothe them with finality").  "Promotion of this policy requires judicial enforcement of settlement agreements."  *MWS Wire Indus., Inc. v. California Fine Wire Co., Inc.*, 797 F.2d 799, 802 (9th Cir. 1986).  A settlement agreement will not "be overturned short of fraud, false representation, overreaching or a mutual mistake of which the evidence is clear and convincing."  *Metropolitan Life Ins. Co. v. Ritz*, 70 Wn. 2d 317, 321, 422 P.2d 780 (1967).

Settlement agreements are governed by general principles of contract law.  *Lavigne v. Green*, 106 Wn. App. 12, 20, 23 P.3d 515 (2001); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990).  A contract requires offer, acceptance, and consideration.  *Veith v. Xterra Wetsuits, L.L.C.*, 144 Wn. App. 362, 366, 183 P.3d 334 (2008).  Washington follows the



"objective manifestation test" to determine the existence of a contract. *Keystone Land &*
*Dev. Co. v. Xerox Corp.*, 152 Wn. 2d 171, 177, 94 P.3d 945 (2004). This means that "the
mutual assent of the parties . . . must be gathered from their outward expressions and acts,
and not from an unexpressed intention." *Everett v. Estate of Sumstad*, 95 Wn. 2d 853, 855
631 P.2d 366 (1981) (quoting *Washington Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 516, 218
P. 232 (1923)). A party's subjective intention is irrelevant. *Max L. Wells Trust by Horning
v. Grand Cent. Sauna and Hot Tub Co. of Seattle*, 62 Wn. App. 593, 602, 815 P.2d 284
(1991). Accordingly, the "unilateral and subjective beliefs about the impact of a contract
do not constitute evidence of the parties' intent and are irrelevant." David K. DeWolf,
Keller W. Allen, & Darlene Barrier Caruso, 25 *Wash. Prac.*, Contract Law and Prac. § 5.8.
(3d ed.) (citing *William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust
v. Port of Everett*, 159 Wn. App. 389, 245 P.3d 779 (2011); *Wm. Dickson Co. v. Pierce
County*, 128 Wn. App. 488, 116 P.3d 409 (2005)).

### C.  The Settlement Agreement is a Valid Contract

As discussed above, a contract requires offer, acceptance, and consideration. *Veith*,
144 Wn. App. at 366.

Starting with the final requirement, the Settlement Agreement is supported by ample
consideration. The Settlement Agreement sets forth, in detail, how the Parties will wind up
their relationship and resolve disputes arising from the Licensing Agreement, including
payments to be made by Unique Designs, shipments of jewelry from LHD's Southeast
Asian manufacturers, the allocation of profits between the Parties from an anticipated QVC
show, and LHD's direct access to Unique Designs' customers. Franco Decl. Ex. 7 (fully
executed Settlement Agreement) ¶¶ 2.a-2.p.

Unique Designs anticipates that LHD will argue that there was no valid offer and
acceptance. But this anticipated contention is proven false by not reasonably disputed facts,
LHD's representation to the King County Superior Court that "all claims in [the King



County] action have been resolved," and LHD's admission that the Settlement Agreement is a valid contract.

### 1. LHD Accepted Unique Designs' Offer

Despite that LHD admitted in its answer to Unique Designs' counterclaim that the Settlement Agreement is a "valid contract," *see infra* § V.C.2, despite LHD's filing of a "Notice of Settlement of All Claims Against All Parties," *see infra* § V.D, and despite LHD's implicit admission in an interrogatory answer that the Settlement Agreement is enforceable, *see infra* n.3, based upon a recently amended interrogatory answer Unique Designs anticipates that LHD will argue there was no acceptance of the term of the Settlement Agreement requiring dismissal with prejudice within 5 days of execution of that agreement.  Uncontroverted evidence and LHD's post-settlement conduct conclusively establishes that LHD did accept Unique Designs' offer.

As described above, one of the most contentious issues in the parties' settlement discussions was whether the King County lawsuit would be dismissed, with prejudice, shortly after execution of the Settlement Agreement, or if the lawsuit would remain in limbo pending the parties' complete performance under that agreement (which would take months).  Franco Decl. ¶¶ 8-11.  LHD now asserts that Unique Designs "surreptitiously inserted" the dismissal with prejudice language in the Settlement Agreement.[3]  Roller Decl. Ex. 4 at 8.  Incontrovertible evidence shows this is false.  And even were it true, LHD knew of the "dismissal with prejudice" language for months—and demanded that UD perform

---

[3] Even having once amended its interrogatory answer regarding enforceability of the Settlement Agreement, it is unclear whether LHD contends that the Settlement Agreement is valid only if LHD seeks to invoke it or that it is invalid.  In response to an interrogatory asking if LHD "contend[s] the Settlement Agreement is unenforceable," and if so to describe all grounds, LHD twice answered "LHD contends the Settlement Agreement is unenforceable by UD, as UD materially breached the Settlement Agreement by failing to make payments due thereunder at the times and in the amounts specified."  Roller Decl. Exs. 3 (original interrogatory answer) at 6 (emphasis in original) & 4 (amended interrogatory answer) at 6 (emphasis in original).  By stating that the Settlement Agreement is unenforceable by Unique Designs, LHD appears to imply that it is enforceable by LHD.  Aside from LHD's "executory accord" argument, which is meritless for the reasons described in Section V.E, *infra*, LHD has offered no explanation for how a contract could be unenforceable for lack of agreement by one party, but enforceable by another.



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

under the Settlement Agreement—without contending there had been no acceptance of this essential term.

On May 18, 2020, Mr. Brady sent Unique Designs' General Counsel, Ravi Patel, an email stating that LHD would withdraw the complaint only without prejudice.  Franco Decl. ¶ 9 & Ex. 3.  The next morning, Mr. Patel responded, writing in part, "[a]ny dismissal must be with prejudice and any breach thereafter can be resolved by enforcing the terms of the agreement . . . ."  *Id.*  Shortly thereafter, Mr. Brady indicated his disagreement, and then sent an email with clean and redlined drafts of the settlement agreement.  *Id.* ¶ 10 & Exs. 3-4.  Contrary to Unique Designs' insistence that dismissal occur with prejudice, those drafts purported to delay dismissal until after certain payments had been made.  *Id.*  Accordingly, Unique Designs changed the dismissal section of the settlement agreement from

> Within five (5) business days of the date that UD makes the last of the payments specified in Paragraphs 2.b and 2.c above, LHD shall voluntarily dismiss the Lawsuit is has filed with prejudice, provided however, that the exclusive jurisdiction of any lawsuit relating to this Agreement shall be in King County Superior Court, Seattle, Washington.

to

> LHD shall voluntarily dismiss the Lawsuit it has filed with prejudice within five (5) days of full execution of this Agreement, provided however, that the exclusive jurisdiction of any lawsuit relating to this Agreement shall be in King County Superior Court, Seattle, Washington.

Patel Decl. ¶ 6.  Unique Designs' CEO signed the Settlement Agreement with this changed language.

In the afternoon of May 19, 2020, Mr. Brady called Mr. Patel and left a voicemail asking that Mr. Patel return his call.  *Id.* ¶ 7 & Ex. 1.  Immediately after that, Mr. Brady sent Mr. Patel this text message:

> Ravi, Bill Brady here.  I am driving and spoke with Albert [Franco] who said we would be receiving Tejas' signature page very shortly.  I have Lois' signature page on hand and will send when I receive Tejas'.  Since I cannot read and compare the document while driving, can you confirm the only change you made was to that sentence we discussed on the phone regarding the removal of paragraph 2.c and 2.d.  Thank you.



*Id.* ¶ 7 & Ex. 2.

Fifteen minutes after receiving Mr. Brady's text message, Mr. Patel called Mr. Brady and explained that he had removed reference to the payment obligations in Paragraphs 2.b and 2.c of the dismissal section of the Settlement Agreement.[4]  *Id.* ¶ 8.  That call lasted three and a half minutes.  *Id.* Ex. 3.  Shortly after that call Mr. Patel sent that executed Settlement Agreement to Mr. Brady.  *Id.* ¶ 9 & Franco Decl. ¶ 11 & Ex. 5. Moments later Mr. Brady emailed Mr. Patel and Mr. Franco the Settlement Agreement signature page executed by LHD, writing, "I am relying on the agreed upon few changes you mentioned to me on the phone just now, as I'm driving and not able to read the document carefully for a few hours."  Franco Decl. ¶ 11 & Ex. 6.

The next day, Mr. Brady requested a copy of the Settlement Agreement with both executed signature pages, which Mr. Patel provided a few days later.  *Id.* ¶ 12 & Ex. 7. Thereafter, Unique Designs repeatedly requested dismissal of the King County lawsuit, per the Settlement Agreement dismissal section.  Franco Decl. ¶¶ 12-14 & Exs. 7-10.  At the same time, LHD repeatedly pressed for performance under the Settlement Agreement and did not contest its validity or attempt to revoke it on the grounds that Mr. Brady had been "hoodwinked" by Mr. Patel's alleged "surreptitious" editing of the dismissal provision. This "subsequent conduct of the contracting parties," *i.e.*, LHD's demands for Unique Designs to perform under the Settlement Agreement, demonstrates that LHD intended to be bound by that contract.  *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.3d 222 (1990); *see also Fuller v. Ostruske*, 48 Wn.2d 802, 807, 296 P.2d 996 (1956) (subsequent conduct consistent with contract evidences acceptance).

---

[4] Mr. Brady's reference to "removal of paragraph 2.c and 2.d" plainly was a mistaken reference to paragraphs 2.b and 2.c.  Paragraphs 2.b and 2.c were the only provisions referenced in "that sentence" (to use the term Mr. Brady used for the dismissal provision, Paragraph 2.m).  *See* Franco Decl. Ex. 4 ¶ 2.m.  And indeed Mr. Patel did remove reference to Paragraphs 2.b and 2.c from the dismissal provision.  Compare *id.* Ex. 4 ¶ 2.m *with id.* Exs. 5, 7 ¶ 2.m; *see also* Patel Decl. ¶ 6.

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1      "Washington adheres to the general contract principle that parties have a duty to

2  read the contracts they sign." *Del Rosario v. Del Rosario*, 152 Wn.2d 375, 385, 97 P.3d 11

3  (2004) (citing *Nat'l Bank of Wash. v. Equity Investors*, 81 Wn.2d 886, 912, 506 P.2d 20

4  (1973)).  And even setting aside that Mr. Patel told Mr. Brady that the release provisions of

5  the Settlement Agreement executed by Unique Designs had been changed (a fact confirmed

6  by Mr. Brady's text message asking about those changes), a "party generally cannot escape

7  the duty of reading the documents (the duty to 'investigate' by simply reading the

8  documents in order to know their contents) in the absence of a showing that he or she was

9  unable to read or understand the language used, that there was a special relation of trust and

10  confidence in the representing party, that some artifice was employed to obtain his or her

11  signature, or that something was done to prevent his or her reading of the document."

12  *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 385, 745 P.2d 37 (1987); *Max L. Wells*

13  *Trust*, 62 Wn. App. at 602 ("Absent fraud, deceit or coercion, a voluntary signatory is

14  bound to a signed contract *even if ignorant of its terms*.") (emphasis in original).  LHD can

15  make no such showing justifying its (claimed) failure to read the Settlement Agreement.

16  But even if it could, reliance on any kind of representation must be reasonable.  *Skagit State*

17  *Bank*, 109 Wn.2d at 385.  In no circumstance could LHD's reliance on anything said in a

18  call between Mr. Brady and Mr. Patel be reasonable, as both the Settlement Agreement

19  ultimately entered and the last draft sent by Mr. Brady specifically provided that "[t]he

20  Parties acknowledge and agree that they are not relying upon any representations or

21  statements made by the other Party or the other Party's employees, agents, representatives

22  or attorneys regarding this Agreement." *Compare* Franco Decl. Ex. 4 ¶ 14 *with* Franco

23  Decl. Ex. 7 ¶ 14.

24      **2.  LHD Admitted the Settlement Agreement is Valid**

25      In Paragraph 32 of its Counterclaim, Unique Designs alleged that "[t]he Settlement

26  Agreement is a valid contract between Unique Designs, on one hand, and LHD, on the

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 14



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

other."  Unique Designs' Answer and Counterclaim (Dkt. No. 19) ¶ 32.  LHD answered this

allegation by pleading, "Admit."[5]  Plaintiffs' Answer to Defendants' Counterclaim (Dkt.

No. 20) ¶ 32.  "[A]dmissions in the pleadings are generally binding on the parties and the

Court."  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)

(quoting *Ferguson v. Neighborhood Housing Servs.*, 780 F.2d 549, 551 (6th Cir. 1986)).

"Judicial admissions are formal admissions in the pleadings which have the effect of

withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."

*Id.* (quoting *In re Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)).

Accordingly, LHD has admitted that the Settlement Agreement is a valid contract.  *Id.*; *see*

*also Grassmueck v. Potola Village, LLC*, No. C17-0236JLR, 2018 WL 2984831, at *10

(W.D. Wash., June 14, 2018); *Karpenski v. American Gen. Life Companies, LLC*, 999 F.

Supp. 2d 1235, 1240 (W.D. Wash. 2014).  Accordingly, LHD is bound by its admission that

the Settlement Agreement is a valid contract.

### 3. Disagreement Regarding the Ledger Does not Invalidate the Settlement Agreement

LHD is likely to raise a post-Settlement Agreement execution dispute regarding a

"ledger" referenced in the Settlement Agreement to argue there was no meeting of the

minds.  Setting aside that this is contrary to LHD's admission in its answer to Unique

Designs' counterclaim, *i.e.*, that the Settlement Agreement is valid, *see supra* Section

V.C.2, this issue is a red herring.

Unique Designs expects LHD to assert that because "agreements to agree" are not

enforceable, the Settlement Agreement fails for lack of a meeting of the minds regarding

the ledger.  Unique Designs does not quibble with the uncontroversial proposition that

agreements to agree are not enforceable.  *P.E. Systems, LLC v. CPI Corp.*, 176 Wn.2d 198,

---

[5] Unique Designs' counsel mistakenly mis-numbered this paragraph by using "32" twice.  However, LHD's admission plainly is to Unique Designs' allegation that the Settlement Agreement is valid, as LHD noted Unique Designs' counsel's error in using paragraph number 32 twice.  *See* Plaintiff's Answer to Defendants' Counterclaim at 4 (pleading "32. [sic] Admit").

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 15



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

289 P.3d 638 (2012).  Contracts frequently contain terms that are not entirely defined at the time they are entered, just as the "ledger" here.  Indeed, "[w]here the parties have intended to finalize a bargain, any uncertainty as to incidental or collateral matters is generally not harmful to the validity of the contract."  25 *Wash. Prac.*, Contract Law and Practice § 2:27 (citing Restatement (Second) of Contract § 33, cmt. a (1981)).

Here, in the Settlement Agreement the Parties referenced a "ledger" that would be reconciled and used to make various calculations in the weeks and months after the Settlement Agreement was entered. For example, the ledger attached to Mr. Brady's May 19, 2020 email was labelled "[a]s of May 18[,] 2020."  Franco Decl. Ex. 4.  The Parties explicitly anticipated adjustments to the ledger.  For example, the ledger contained a line to "[a]dd if applicable: May QVC Add & Surround TBD" and another line that contained an estimated profit split, noting "COG to be adjusted for shipping, duty, etc."  *Id.*

The preliminary (and anticipated to be adjusted) nature of the ledger is confirmed by the terms of the Settlement Agreement.  For example, the Settlement Agreement provides:

> UD has *estimated* LHD's 50% portion of the profit as shown on the Ledger.  The actual profit amount *will be determined* by taking the total proceeds of the order, less the COG, import and duty costs, less the actual RTV amount for that show, if any.  The *estimated figure on the Ledger will be adjusted by the actual number when determined properly between the parties.*

Franco Decl. Ex. 7 ¶ 2.f. (emphases added).  That the ledger was not intended to be a definitive statement is further shown by the Parties' agreement that "[a]ll settlement will be on actual reconciled numbers, the Parties will provide all the paperwork for the same and expect them to respond so it can be done within the week."  *Id.* ¶ 2.n.

*P.E. Systems* is instructive.  In that case, the parties entered a contract relating to consultant P.E. Systems' efforts to save credit card processing costs for its client, CPI Corporation.  The contract contemplated calculation of the client's "historic cost," upon which the consultant's fee would be calculated.  *P.E. Systems*, 176 Wn.2d at 201-02.  The contract provided that this calculation of "historic cost" "will be set forth and mutually

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 16



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

agreed to by the parties in Addendum 'A.'"  *Id.* at 202.  No "Addendum 'A'" had been completed.  *Id.*  When P.E. Systems sought to enforce the contract, its client argued that the absence of a completed "Addendum 'A'" rendered the contract an unenforceable "agreement to agree."  The trial court agreed, finding that no meeting of the minds had occurred and the contract was an unenforceable "agreement to agree."  *Id.*

The court of appeals and the Washington Supreme Court disagreed with the trial court, finding that the contact was *not* an unenforceable "agreement to agree:"

> A valid contract requires the parties to objectively manifest their mutual assent to all material terms of the agreement.  . . .  All material terms were agreed to by the parties here.  The nonnegotiable formula for calculating CPI's "Historic Cost" was agreed to by both parties, and the formula results in a mathematically determined number.  Because the Historic Cost is a specific number determined by a specific mathematical formula, the blank addendum is immaterial for the purpose of determining whether the contract is valid; it is an open term that can easily be calculated.  If there is a dispute between the parties with respect to the calculation of the "Historic Cost," the dispute can be resolved by the trial court.

*Id.* at 209-10 (citation omitted).  The Washington Supreme Court recognized that this was an unremarkable, common circumstance that did not invalidate contracts:

> To the extent the contract provided that the parties were yet to agree on the calculation of the Historic Cost, it is little different from parties agreeing to payment based upon square footage, time, materials, or other formulas commonly agreed to by parties as a basis for determining the final cost of a contract

*Id.* at 210.

Just as in *P.E. Systems*, the final ledger could be determined by the Parties based upon mathematical calculations.  Indeed, the Parties explicitly called for such adjustment and reconciliation in the Settlement Agreement.  *See, e.g.*, Franco Decl. Ex. 7 ¶¶ 2.f, 2.n ("[a]ll settlement will be on actual reconciled numbers").  If the Parties later disputed those mathematically calculated figures, they could take them up before the King County Superior Court per Paragraph 2.m ("the exclusive jurisdiction of any lawsuit relating to this Agreement shall be in King County Superior Court").



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

### D. LHD Informed the King County Superior Court that the Dispute had been Resolved

The King County Superior Court Local Civil Rules require that parties promptly inform the court of "any settlement that fully resolves all claims against all parties." KCLCR 41(e)(1).  As indicated by the comments on this local rule, this requirement is "intended to prevent a case from entering a state of suspended animation after the parties reach a settlement."  KCLCR 41 official comment.

Under KCLCR 41(e)(2), on July 2, 2020, LHD filed a "Notice of Settlement of All Claims Against All Parties."  Roller Decl. Ex. 1.  That notice provided, in part, that:

> Notice is hereby given that all **claims against all parties in this action have been resolved**.  Any trials or other hearings in this matter may be stricken from the court calendar.  **This notice is being filed with the consent of all parties.**

*Id.* (emphases added).  Why would LHD file this notice if indeed "all claims against all parties" were not resolved?  It wouldn't, and LHD's apparent attempt to disclaim this admission must be rejected.

In a similar situation in federal court, the Ninth Circuit Court of Appeals rejected a plaintiff's attempt to recharacterize a notice of settlement (which could not be withdrawn) as a voluntary dismissal (which could).  The Ninth Circuit's analysis is instructive:

> [Plaintiff] mischaracterizes the Notice of Settlement as a "plaintiff's request" for voluntary dismissal, as to which he says he had a right to withdraw that "request within a reasonable time.  To be sure, a plaintiff may withdraw a Rule 41(a)(2) dismissal motion "if he feels the conditions imposed [on dismissal] are too burdensome."  *Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 931 (9th Cir. 1986)), but **that proposition has no bearing where, as here, the dismissal is by agreement of all the parties, rather than initiated solely at the plaintiff's instance** (the latter being the defined scope of Rule 41(a)).  [Plaintiff's] Notice of Settlement was not a "plaintiff's request" for dismissal—it was instead a statement that the *parties* had settled.  [Plaintiff] cannot draw upon *Lau* for support because his Notice of Settlement bears no resemblance to the Rule 41(a)(2) motion at issue in that case.

*Camacho v. City of San Luis*, 359 Fed. Appx. 794, 798 (9th Cir. 2009) (first emphasis added; second emphasis in original).  Just as in *Camacho*, here LHD filed a "statement that



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

the *parties* had settled."  Not only does this confirm that LHD understood the Settlement

Agreement to "resolve "all claims against all parties," but under the *Camacho* Court's

reasoning, such notice cannot be withdrawn to re-instate released claims.  *Id.*

### E. The Settlement Agreement is not an Executory Accord

Given that LHD accepted the terms of the Settlement Agreement, as evidenced by

(1) the Parties' negotiating history, (2) the signature LHD provided to Unique Designs,

(3) LHD's failure to object to the Settlement Agreement after Mr. Brady was done driving

on the date it was mutually executed, (4) LHD's insistence that the terms of the Settlement

Agreement in its favor be observed for many weeks after it was entered, (5) LHD's filing of

a "Notice of Settlement" of "all claims against all parties," and (6) LHD's admission in its

answer to Unique Designs' counterclaim that the Settlement Agreement is a valid contract,

LHD is left only with the argument that somehow the Settlement Agreement did not require

dismissal of LHD's claims with prejudice.  Unique Designs anticipates that LHD will argue

that the Settlement Agreement is an executory accord as opposed to a substitute contract.

This anticipated argument is meritless.

LHD is almost sure to note that "[a] settlement agreement is presumed to be an

executory accord, not a substituted contract."  *Rosen v. Ascentry Technologies, Inc.*, 143

Wn. App. 364, 370, 177 P.3d 765 (2008).  As above, Unique Designs does not quibble with

this uncontroversial statement of law.  But Unique Designs anticipates that LHD will ignore

that this presumption may be overcome with clear evidence that the agreement was

intended to be a "satisfaction" or substituted contract.  *Id.* at 371 ("Where it is the promise

to perform instead of the performance that is accepted, it must explicitly appear that such

was the intention of the parties") (quoting *Rodgers v. City of Spokane*, 9 Wash. 168, 174, 37

P. 300 (1894)) (emphasis omitted).  Here, there is abundant, indisputable evidence that the

Settlement Agreement is a substituted contract, not an executory accord.

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Most obviously, the Settlement Agreement explicitly provides that "LHD shall voluntarily dismiss the Lawsuit it has filed with prejudice within five (5) days of full execution of this Agreement." Franco Decl. Ex. 7 ¶ 2.m. This demonstrates that the Settlement Agreement is a substituted contract, as the only condition to dismissal is the passage of five days from execution of the agreement. Further, the Settlement Agreement contains numerous terms that could not have been completed within five days of its execution. For example, LHD's manufacturer Laksmi was to "ship to UD the current order for Macy's in early June"—well past five days of execution of the agreement. *Id.* ¶ 2.d; *see also id.* ¶ 2.h (providing that "UD will administer the June QVC show, or if there is no show in June then the next QVC show").

Unique Designs anticipates that LHD will point to the first clause of the Settlement Agreement's release provision, which provides in part that "[u]pon the full and final satisfaction by UD and LHD of any and all of their respective obligations under this Agreement, LHD and UD do hereby release, cancel, and forever discharge the other Party." *Id.* ¶ 1. Read alone this might make it appear that the release is conditioned upon completion of the obligations in the Settlement Agreement. But this clause can't be read alone. The final sentence of that paragraph explicitly provides that "[t]o avoid any confusion, *notwithstanding the above*, the Lawsuit was filed by LHD on May 1, 2020, but will be voluntarily withdrawn by LHD in accordance with Paragraph 2.m below." *Id.* (emphasis added). Of course, Paragraph 2.m provides that the lawsuit will be dismissed with prejudice five days after execution of the Settlement Agreement. *Id.* ¶ 2.m. Three of the most basic cannons of contract interpretation require that the Court determine that the dismissal with prejudice mandated by Paragraph 2.m occur notwithstanding the introductory clause of the release.

*First*, specific terms of a contract are to be given greater weight than general terms. *Spokane School Dist. No. 81 v. Spokane Educ. Ass'n*, 182 Wn. App. 291, 310, 331 P.3d 60



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

(2014) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions.") (quoting *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002)).  Accordingly, the specific requirement that LHD dismiss the lawsuit within five days of execution of the Settlement Agreement controls over the general statement that the release is conditioned on full satisfaction of the obligations in that agreement.[6]

     *Second*, a court should give effect to each part of the contract rather than render some of the language meaningless or ineffective.  *Bellevue Square, LLC v. Whole Foods Market Pacific Northwest, Inc.*, 6 Wn. App. 2d 709, 717, 432 P.3d 426 (2018) ("Interpretations giving lawful effect to all the provisions in a contract are favored over those that render some of the language meaningless or ineffective.") (quoting *Grey v. Leach*, 158 Wn. App. 837, 850, 244 P.3d 970 (2010)).  Finding that the first clause of the release provision means that no claims under the Licensing Agreement are released until all terms of the Settlement Agreement are completed would render meaningless and ineffective the requirement at the end of that release provision and in Paragraph 2.m that the lawsuit be dismissed with prejudice five days after execution of the Settlement Agreement.

     *Third*, courts will not give effect to interpretations that would render contractual obligations illusory.  *Taylor v. Shigaki*, 84 Wn. App. 723, 730, 930 P.2d 340 (1997) (citing *Kennewick Irr. Dist. v. U.S.*, 880 F.2d 1018, 1032 (9th Cir. 1989)).  Interpreting the Settlement Agreement to require that all of its terms be met prior to dismissal of the lawsuit would render both the dismissal provisions of Paragraph 2.m and "entire agreement" provisions of Paragraph 14, discussed *infra*, illusory.

---

[6] These two provisions can be squared as follows: the release releases everything under the Licensing Agreement and Settlement Agreement, but the obligations under the Settlement Agreement are released only when all of its terms have been met.  In contrast, the obligations under the Licensing Agreement are released immediately (and the lawsuit asserting claims under that Licensing Agreement was to be dismissed in five days).  This is consistent with Paragraph 2.m's provision that "exclusive jurisdiction of any lawsuit relating to this [Settlement] Agreement shall be in King County Superior Court, Seattle, Washington."  Franco Decl. Ex. 7 ¶ 2.m.

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 21



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1    Additionally, the agreed recitals in the Settlement Agreement make clear that by

2    executing that agreement the parties were foregoing all disputed rights under the Licensing

3    Agreement:

> Whereas, the Parties recognize that **by the execution** of this mutual
> Settlement Agreement and Release, **they are relinquishing all their
> respective legal rights with respect to the Dispute and any claims and
> counterclaims that could have been asserted in the Lawsuit**.

Franco Decl. Ex. 7 at 1 (emphases added).  That the Parties agreed to "relinquish[] all of

their respective rights with respect to the Dispute," *i.e.* "disputes and differences . . .

between the Parties with respect to the [Licensing Agreement]," "by the execution of" the

Settlement Agreement, the Settlement Agreement cannot be considered an executory

accord.   This provision also reveals the Parties' intent that the Settlement Agreement

replace the Licensing Agreement.

Finally, the Settlement Agreement provides:

> This Agreement sets forth the **entire and complete understanding and
> agreement between the Parties regarding the subject matter hereof**
> including, but not limited to the settlement of all disputes and claims with
> respect to the [Licensing Agreement] and the Dispute and **supersedes any
> and all other prior agreements or discussions**, whether oral, written,
> electronic or otherwise, relating to the subject matter hereunder.

Franco Decl. Ex. 7 ¶ 14 (emphases added).  By this explicit term, the Settlement Agreement

"supersedes any and all other prior agreements."

Abundant provisions in the Settlement Agreement show that the agreement is a

substituted contract for the Licensing Agreement.  LHD representatives may testify that

they did not want to substitute the Settlement Agreement for the Licensing Agreement or

now have buyer's remorse over having done so.  But a court may not consider "(1) evidence

of a party's unilateral or subjective intent as to the meaning of a contract word or term; (2)

evidence that would show an intention independent of the instrument, or (3) evidence that

would vary, contradict or modify the written word. *Kelley v. Tonda*, 198 Wn. App. 303,



312, 393 P.3d 824 (2017) (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695, 974 P.2d 836 (1999)) (internal quotation marks omitted).

### F.  LHD Breached the Settlement Agreement by Continuing this Lawsuit

The Settlement Agreement required LHD to dismiss this lawsuit with prejudice within five days of execution.  Franco Decl. Ex. 7 ¶ 2.m.  The Settlement Agreement was executed on May 19, 2020.  Franco Decl. ¶ 11.  Accordingly, LHD should have dismissed the lawsuit by May 25, 2020.[7]  LHD did not, and therefore breached the Settlement Agreement.  This Court should grant summary judgment in Unique Designs' favor on it claims for breach of the Settlement Agreement and for declaratory judgment that the Settlement Agreement is an enforceable contract and extinguished the rights, obligations, and claims under the Licensing Agreement.  Because dismissal under the Settlement Agreement was required to be with prejudice, the Court should also dismiss all of LHD's claims in this action, all of which are based upon the Licensing Agreement.

### VI.    CONCLUSION

Because the Parties entered into a binding Settlement Agreement, the Court should enforce the Settlement Agreement and dismiss LHD's claims against Unique Designs with prejudice.  A proposed order is submitted herewith.

DATED: November 16, 2021.

**ARETE LAW GROUP PLLC**

By: */s/ Jeremy Roller*
Jeremy E. Roller, WSBA No. 32021
1218 Third Avenue, Suite 2100
Seattle, WA 98101
Phone: (206) 428-3250
Fax:    (206) 428-3251
jroller@aretelaw.com

---

[7] The fifth day after May 19, 2020, was May 24.  Because May 24 was a Sunday, LHD should have dismissed the lawsuit by the first business day thereafter.



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Attorneys for Defendant/Counterclaim Plaintiff Unique Designs, Inc.*

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused true and correct copies of the foregoing document to be served upon the following, at the addresses stated below, via the method of service indicated:

**BARRETT & GILMAN**

Thomas L. Gilman
1000 Second Avenue, Suite 1430
Seattle, WA 98104
tgilman@bgseattle.com

☐ E-mail
☐ U.S. Mail
☒ E-filing

*Attorneys for Plaintiff/Counterclaim*
*Defendant Lois Hill Designs, LLC*

Dated this 16th day of November, 2021.

*/s/ Janet C. Fischer*
Janet C. Fischer
Paralegal

MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01403-RSL – Page 25

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250